COOLEY LLP
SCOTT D. DAILARD (172477)
(sdailard@cooley.com)
MEGAN L. DONOHUE (266147)
(mdonohue@cooley.com)
VIVIENNE A. GOLDSCHLAG (345611)
(vgoldschlag@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:  +1 858 550-6000
Facsimile:   +1 858 550-6420

Attorneys for Plaintiff
Function Health, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FUNCTION HEALTH, INC., a Delaware Corporation, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY DEMAND REQUESTED** |
| SUPERPOWER HEALTH, INC., a Delaware Corporation, and DOES 1 through 10, inclusive, | |
| Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**COMPLAINT**

Plaintiff Function Health, Inc. ("Plaintiff" or "Function"), by and through their undersigned attorneys, hereby brings this action against Defendant Superpower Health, Inc. ("Superpower") and the unnamed Does 1 through 10 defendants ("Doe Defendants"), and alleges as follows:

## INTRODUCTION

1.    Superpower operates its business around a strategy of deception: it seeks to create an illusion of market-leading service offerings—but then grossly underdelivers on its promises.  At the core of this strategy is Superpower's sweeping campaign of false and misleading advertising that misrepresents the scope and quality of its own services, while simultaneously providing misinformation about and drawing distorted comparisons to its industry-leading competitor Function.

2.    For example, Superpower has repeatedly misrepresented the depth of the laboratory testing available through their membership.  Across numerous public-facing advertisements and promotions, Superpower has falsely claimed that its basic membership bundles access to "100+ lab tests" and "100+ biomarkers" per year.  In reality, consumers who purchase this membership only receive approximately 55 direct measurements per year as part of the package: the remaining 45+ "labs" or "tests" are not actually laboratory tests or biomarker measurements at all; they are merely calculated metrics derived from a limited number of actual lab tests, and some of those metrics are proprietary to Superpower and, by its own admission, "not an FDA-cleared test."  Superpower then compounds this deception by weaponizing the inflated tally in advertisements that falsely claim that Superpower offers an equivalent scope of testing at a significantly lower price point than Function—when, in fact, Function's membership includes prepaid access to more than 160 *actual* laboratory tests per year.

3.    Superpower's misconduct does not stop at numerical sleight-of-hand.  Among other false claims, the company has blatantly deceived consumers with false promises of "24/7" access to a "real clinical team" and access to "3,000+" lab testing

locations when such offerings simply do not exist.  And once again, Superpower has amplified these misrepresentations in comparative advertising expressly targeting Function.  Similarly, Superpower outright altered consumer review content posted on social media to falsely suggest an endorsement of Superpower over Function, then leveraged the fabricated content in advertisements for Superpower's services.

4.  Such desperate and deceptive practices are the predictable outgrowth of a corporate culture that is shaped by its leadership's disregard for legal and ethical boundaries.

5.  Among other things, Superpower Co-Founder Jacob Peters ("Peters") has publicly acknowledged illegally "minting [] fake IDs for more than just our friends…all the way through the end of high school into college" and former association with "people running illicit fake ID rings out of China [during] the heyday of the Silk Road."[1]  He then admits that he abandoned this activity when "authorities were starting to get a little too close to home."

6.  As another example, in a recent and widely viewed podcast,[2] Superpower Co-Founder Max Marchione ("Marchione") injected the podcast host with multiple compounds that generally require a prescription—and on information and belief, *sans* the required licensure for administering injections, and *sans* a valid prescription for the host.  During this same podcast, Marchione boasted, "Every Friday, our team [at Superpower] does a Friday breakfast, which means we inject each other, because we think it's fun."[3]  Notably, Superpower sells consumers some of the same compounds that Marchione illegally administered in the aforementioned

---

[1] *#70: Jacob Peters - LEGO Empires, Fake ID Rings, Tulum Mansions, and Discovering Community*, FINDING FOUNDERS (May 31, 2021), https://www.ivoox.com/en/70-jacob-peters-lego-empires-fake-id-audios-mp3_rf_69986452_1.html.

[2] This episode was viewed more than 80,000 times on X (f/k/a Twitter) alone.  *See* Ti More, @ti_morse, X (Aug. 14, 2025), https://x.com/ti_morse/status/1956008370990690325 (last accessed Jan. 21, 2026).

[3] Marchione then demonstrated a consciousness of guilt by caveating his injection of the podcast host with the statement that, "In the US, this is only for research purposes. So we're performing research right now."

1  podcast.

2  7.  Against the backdrop of its leadership's flippant disregard for legal and

3  regulatory safeguards, including those bearing on patient safety, Superpower's false

4  and misleading advertising, as detailed in this Complaint, is not mere puffery or an

5  honest overextension of competitive zeal.  Instead, it is a calculated strategy rooted

6  in a devil-may-care approach to public health, consumer rights, and the integrity of

7  an emerging healthcare service sector.  Nor will the issue resolve on its own.  Indeed,

8  Superpower and its leadership have only accelerated their false and misleading

9  comparative claims about Function since learning of Function's successful closing

10  of a major fundraising round in November 2025.

11  8.  This lawsuit seeks to stop Superpower's campaign of deception before

12  more consumers are misled and more harm is done.  Function brings this action to

13  protect the integrity of the marketplace, safeguard consumers' trust in legitimate

14  health technology services, halt the bad-faith practices of a competitor that has

15  repeatedly chosen falsehood over fair competition, and recover damages resulting

16  from such outrageous misconduct.  As described more completely below,

17  Superpower's unlawful acts and omissions violate the Lanham Act and California

18  law, harm Function's business reputation and sales, and pose a threat to public health.

19  The law does not permit a company to manufacture the false appearance of

20  superiority through fabricated metrics, faked reviews, dishonest comparisons, and

21  reckless, unkept promises—least of all in a context where health and wellness

22  interests are at stake—and Function respectfully seeks the Court's intervention in

23  holding Superpower accountable.

24  **PARTIES**

25  9.  Plaintiff Function Health, Inc. is a Delaware corporation with a principal

26  place of business at 600 Congress Ave, Floor 14, Austin, TX 78701.

27  10.  Function operates a membership-based platform that facilitates access

28  to advanced clinical laboratory testing and health technology services.  Function's

services are available for sale throughout this District and the State of California.

11.    Defendant Superpower Health, Inc. is a Delaware corporation with a principal place of business at 11209 National Boulevard, Unit #1016, Los Angeles, CA, 90064.

12.    Superpower operates a membership-based platform that facilitates access to clinical testing services.  Superpower's services are available for sale throughout this District and the State of California and are marketed in direct competition with the services offered by Function.

13.    The true names and capacities, whether individual, corporate, associate or otherwise, of the Doe Defendants are unknown to Function, which therefore sues said defendants by such fictitious names.  Function will seek leave of this Court to amend this Complaint to include their proper names and capacities if and when they have been ascertained.  Function is informed and believes, and based thereon alleges, that each of the fictitiously named defendants participated in and are in some manner responsible for the acts described in this Complaint and the damage described herein.

14.    Function alleges on information and belief that each of the defendants named herein as Does 1 through 10, inclusive, performed, participated in, and/or abetted in some manner, the acts alleged herein, proximately caused the damages alleged herein, and are liable to Function for the damages and relief sought herein.

15.    Function alleges on information and belief that, in performing the acts and omissions alleged herein, and at all times relevant hereto, Does 1 through 10 are the agents, servants, employers, employees, partners, joint venturers, and/or co-conspirators of each of the other defendants, including Superpower, and in doing the acts alleged herein were acting on behalf of each other in one or more of those capacities.

## JURISDICTION AND VENUE

16.    This is an action for false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, and violations of

statutory laws of California.  Accordingly, this Court has subject-matter jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121, as well as 28 U.S.C. § 1331. The Court also has diversity jurisdiction over all claims pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties, and the amount in controversy, exclusive of costs and interests, exceeds $75,000.

17.    All other claims asserted in this action arise out of the same transaction or occurrence, meaning this Court has supplemental jurisdiction over all additional claims asserted in this case under 28 U.S.C. § 1367(a).

18.    This Court has personal jurisdiction over Defendant Superpower because it committed many of the acts that form the basis of Function's claims—including dissemination of the false advertisements—in California and in this District.  Superpower's activities are also directed and controlled from Los Angeles County, California.  Superpower regularly conducts business, including advertising, offering to sell, and selling its services in this District and elsewhere in and throughout the United States.  Further, Superpower's wrongful acts complained of herein took place within this judicial District.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.  In actions brought under the Lanham Act, courts recognize that "a substantial part of the events giving rise to the claims, as required for proper venue, occur in any district where consumers are likely to be confused by the accused goods, whether that occurs solely in one district or in many."  *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009); *see also OSN Labs, LLC v. Phoenix Energy, LLC*, 2024 WL 69690, at *5 (D. Ariz. Jan. 5, 2024) ("Venue is proper in this district because Phoenix Energy sells its product within the jurisdictional boundaries of this district. Therefore, 'a substantial part of the events or omissions giving rise to the claim' occurred in this district.").

**FACTUAL ALLEGATIONS**

**I.    Laboratory Testing Directly Measures an Individual's Health Indicators.**

20.    When individuals want to learn more about their health or address existing health problems, the traditional pathway is to connect with a physician, who evaluates their symptoms or risk factors and may order clinical blood or urine tests to obtain objective information about how the patient's body is functioning.  These tests are then performed by certified laboratories—such as Quest Diagnostics ("Quest"), Labcorp, and similar providers—where trained professionals collect and analyze blood and urine samples using standardized clinical methods.

21.    Such laboratory testing evaluates an individual's health by measuring substances present in the blood or urine.  Through laboratory testing, individuals receive direct measurements of key biological markers, or "biomarkers," bearing on cholesterol, glucose levels, hormone levels, and other health indicators that can signal normal or abnormal processes in the body.  These direct measurements offer clinically validated data reflecting measurable biological function and dysfunction.  Accordingly, as an individual undergoes more laboratory testing, the individual typically receives a more detailed picture of their health and well-being.

22.    While laboratory testing provides *direct* measurements of biomarkers that can be used to assess health, biomarkers can also be used to calculate certain metrics.  Such calculations do not constitute laboratory tests or direct biomarker measurements themselves; instead, the calculated metrics are datapoints that are *derived* from the biomarker measurements.  While some of these calculated metrics offer clinical value, such as the Cholesterol/HDL Ratio or Albumin/Globulin Ratio, other calculated metrics are less commonly utilized.[4]  As such, while certain calculated ratios/indices may provide useful health information, these metrics are not equivalent to laboratory tests and are not themselves biomarkers.

---

[4] For example, an "Indirect-to-Direct Bilirubin Ratio" is a ratio that is not offered by leading lab providers such as Quest and Labcorp.

## II.    Function Transforms Consumers' Access to Advanced Laboratory Testing for Preventative Health.

23.    In recent years, consumers have enjoyed increased access to advanced laboratory testing, including through platforms like Function.

24.    Function is a health technology company founded in 2021 that operates a membership-based platform focused on facilitating consumer access to advanced clinical laboratory testing.  By breaking from the reactive healthcare model, Function embraces routine laboratory testing to promote preventive health insights.  Rather than waiting for symptoms to appear before seeking a blood test, Function encourages individuals to routinely undergo broad panels of tests, regardless of symptoms, in an effort to identify potential health concerns as early as possible while targeting specific biomarkers for meaningful health improvement.  This approach seeks to shift the way the public approaches laboratory testing: from a tool driven by symptoms to a protocol that seeks to optimize bodily functions while looking for health issues before they manifest and/or get worse.

25.    To that end, Function has partnered with leading laboratory service providers to offer a membership-based service that includes annual access to 160+ lab tests consisting of (a) 100+ tests at the start of the membership period and (b) over 60 follow-up tests approximately 3–6 months later.  Because laboratory tests are direct measurements of clinical indicators in an individual's blood or urine—*i.e.*, not merely calculations derived from such measurements—these 160+ lab tests directly measure a host of important biomarkers bearing on cardiac health, metabolism, nutritional health, hormones, and autoimmune health.

26.    Function's standard membership service complements this extensive laboratory testing with a secure digital platform that (a) facilitates the scheduling of a lab appointment; (b) translates complex lab test results into a personalized report based on the member's individual lab results; (c) provides notes from a licensed clinician who reviewed the lab test results; (d) triggers a call from a licensed provider

if any biomarker has a critically out-of-range value; (e) enables users to upload data from wearable devices; (f) tracks health data and trends over time; (g) enables consumers to request and purchase additional lab tests from a trove of advanced laboratory offerings; and (h) ultimately promotes early disease detection. Function members also have access to Private AI Chat (beta feature), which can help them map-out various plans geared towards health and/or wellness (*e.g.*, meal plans, workout routines).

27.    Function's standard membership, which includes the above-described services, costs $365 per year, with additional charges for individuals located in New York and New Jersey. Function members can also request MRI and CT imaging services through a Function partner at any time for an additional cost.

28.    Since launching its beta product in April 2023, hundreds of thousands of members have joined Function. Additionally, in 2025, Time Magazine named Function as one of its "100 Most Influential Companies," Goldman Sachs identified Function's Chief Executive Officer as a "Most Exceptional Entrepreneur," Inc. Magazine recognized Function as "Best in Business" in the "Health Products" category, and Oprah Daily gave Function a "Self-Care O-Award" in the "Tech" Category.

## III.    Superpower Makes False and Misleading Advertisements about the Qualities and Characteristics of its Offerings.

29.    Superpower is a health technology company founded in late 2022 or early 2023 by Peters, Marchione, and Kevin Unkrich. Superpower operates a membership-based platform focused on facilitating consumer access to advanced clinical laboratory testing, with annual fees ranging from $199 to $399. Like Function, Superpower offers a membership that provides prepaid access to certain laboratory tests, facilitates appointments for specimen collection at Quest, delivers summaries of lab test results accompanied by actionable ideas, and offers access to further testing for an additional cost.

30.    In marketing the aforementioned services to consumers throughout the United States, Superpower has made numerous overtly false and misleading representations of fact about the scope, nature, characteristics, and qualities of its offerings, including but not limited to each of the deceptive claims described below.

**A.    Superpower's "100+ labs" and "100+ biomarkers" claims are falsely inflated by the inclusion of calculated metrics.**

31.    Superpower's most frequent false claim goes to the heart of the services it promises consumers.  Superpower asserts that its membership includes "100+ lab tests" and "100+ biomarkers" priced at $17/month or $199 per year (or $399 per year for members in New York and New Jersey).



**Source**: https://superpower.com/ | **Last Accessed**: Jan. 26, 2026



**Source**: https://superpower.com/ | **Last Accessed**: Jan. 26, 2026

32.     Superpower repeats these claims throughout its advertising on its website and in social media, including the following examples:



**Source**: https://superpower.com | **Last Accessed**: Jan. 26, 2026

> # It starts with 100+ labs
>
> From heart health to hormone balance our comprehensive test panels detect early signs of over 1,000 conditions
>
> Explore all biomarkers ↗

**Source**: https://superpower.com | **Last Accessed**: Jan. 26, 2026

> **What exactly does my membership include?**                                              —
>
> Your membership includes:
>
> - Annual full body testing across 100+ biomarkers
> - A custom action plan built on your biology and goals
> - 17 health scores and your biological age
> - AI Chat to dig deeper into your data
>
> Many concierge clinics charge $10k – $100k for their services, we've built technology to make the world's best healthcare as accessible as possible.

**Source**: https://superpower.com/faqs | **Last Accessed**: Jan. 26, 2026

COMPLAINT

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

33.     The above-described advertising is expressly false and misleading—Superpower does not provide consumers access to "100+ labs" or "100+ biomarkers" as part of the standard package.  Far from it, the advertised Superpower membership provides consumers with approximately 55 lab tests that yield 55 measurable biomarkers.    Indeed, Superpower itself explains to potential members that "[b]iomarker testing provides precise, objective data about biological processes and disease risk *by measuring specific molecules in blood samples*,"[5] further explaining that "biomarker testing" can "decod[e] invisible signals pulsing through your veins, breath, and tissue" as well as various types of health indicators "coded in your blood."[6]

34.     To deceive consumers into thinking that Superpower actually offers the advertised "100+" labs and biomarkers, Superpower counts dozens of calculated metrics among this tally, including approximately 14 calculations from Quest and 30 calculations added by Superpower.  Yet, Superpower makes no mention of this fact in its advertising.  This is false and misleading because calculated metrics are not themselves lab tests or direct measures of bodily health indicators found in blood or urine.  To the contrary, calculated metrics are simply derivative data that are created by recombining existing lab values into ratios or indices without performing any new tests or measuring any new biological signals.

35.     Superpower does not disclose its use of derivative data to make its "100+ labs" and "100+ biomarkers" claims.  To the contrary, its website reassures potential members that its biomarker testing measures "specific molecules in blood samples."[7]  Moreover, Superpower admits that many of the purported "biomarkers"

---

[5] Superpower, *Biomarker Testing*, https://superpower.com/biomarkers (last accessed Jan. 26, 2026) (emphasis added).

[6] Superpower, *The Complete Guide to Biomarker Testing*, https://superpower.com/library/guide-to-biomarker-testing?srsltid=AfmBOooVMd9ciwf_EGbDFzPq-RrYq-RAK6ZcCfcyTBAEIhzp2HMjs8BK (last accessed Jan. 25, 2026).

[7] *See* Superpower, *Biomarker Testing*, https://superpower.com/biomarkers (last accessed Jan. 26, 2026).

it measures are not cleared or otherwise validated by the FDA or other regulatory bodies.[8]  In fact, two-thirds of Superpower's calculated ratios and indices are not even provided by Quest—Superpower's laboratory testing partner—but are instead purported to be "proprietary" to Superpower, creating uncertainty about their clinical reliability.  Accordingly, Superpower's inclusion of these derivative ratios and indices as part of the claim that it offers 100+ "lab tests" and "biomarkers" is false and misleading, as Superpower mischaracterizes its calculations as biomarker measurements.

36.    Through its advertising, Superpower allots prominent attention to its false and misleading claims that it provides "100+ labs" and "100+ biomarkers."  Indeed, by amplifying such lies, on Superpower's home page and across its social media advertising, Superpower has saturated the market with blatantly false representations about core service offerings in a manner that stands to grossly mislead the reasonable consumer about the scope, nature, and value of such offerings.

**B.    Superpower falsely purports to offer consumers "24/7" customer access to a "clinical team."**

37.    Superpower also falsely advertises that all Superpower members can have their questions answered "24/7" by Superpower's clinical team.  For example, in a video posted on multiple social media platforms on December 1, 2025, and viewed more than 56,000 times on X alone, Marchione states: "We do everything for you.  When you have got questions, we've got a real clinical team you can talk to 24/7."[9]  In the same video, Marchione further claims that Superpower offers its members access to a medical team "24/7."

---

[8] *Id.*
[9] Max Marchione, *Your Complete Health Plan for $17/Month*, Facebook (Dec. 9, 2025), https://www.facebook.com/61584814527888/videos/1662973388021785/ (last accessed Jan. 26, 2026); Max Marchione, https://x.com/maxmarchione/status/1995628197707481379 (last accessed Jan. 26, 2026); Superpower, INSTAGRAM (Dec. 15, 2025), https://www.instagram.com/p/DST7qW_jFHX/?igsh=NTc4MTIwNjQ2YQ%3D%3D (last accessed Jan. 25, 2026).

38.    This video also appears on Superpower's website when consumers click "Hear from Our CEO"[10] and promises consumers, "When you've got questions, we've got *a real clinical team you can talk to 24/7*, not a chat bot telling you to go see a doctor."

39.    These statements are expressly false because Superpower does not in fact make a real team of human clinicians available to answer questions and talk to its members on a 24/7 basis.

40.    The actual service delivered by Superpower's so-called care team is very different from the on-demand 24/7 access to human clinical advisors touted in its advertising.  First, when members submit a question for the care team, they are not connected immediately to a human clinician.   Instead, they are served with a notification informing them that Superpower personnel will aim to reply to the consumer's message "within 24 hours *on weekdays*," meaning Superpower contradicts its promise of 24/7 on-demand access, and does not promise a response on weekends.

41.    This notification is also followed up by an automated text message to the consumer, reiterating that Superpower "*will aim* to reply in the next 24 hours."

42.    In addition, the Superpower care team is not composed of physicians and registered nurses as an ordinary consumer would reasonably suspect when being told they will have access to "clinicians" in a healthcare context.  Instead, member messages are directed to dieticians and functional health coaches, or "longevity advisors," who may not respond to messages for 24 hours, or even longer if a member submits a question on a Friday or Saturday.

43.    Together, these communications to consumers attempting to access Superpower's alleged "24/7" clinical team confirm that Superpower falls well short

---

[10] After a consumer clicks "Hear from Our CEO," consumers are presented with the first seven seconds of the December 1, 2025, video of Marchione.  If a consumer clicks "Superpower vs Function/Others" underneath the "Welcome" button, a consumer can then watch the rest of Marchione's video. *See* Superpower, *Frequently Asked Questions*, https://superpower.com/faqs (last accessed Jan. 26, 2026).

of providing the real-time, around-the-clock access promised to consumers in public-facing advertising and promotional content.

**C.    Superpower falsely claims that its members can have their lab samples collected at one of Quest's "3,000" lab locations.**

44.    Superpower also falsely claims that its members can have their blood drawn at one of the "3,000" lab locations provided by Quest—Superpower's laboratory testing partner.



**Source**: https://superpower.com/how-it-works | **Last Accessed**: Jan. 26, 2026

**Source**:

https://www.instagram.com/p/DSnlLwIjIfz/?igsh=NjZiM2M3MzIxNA%3D%3D |

**Date**: Dec. 23, 2025

45.    As a primary matter, Quest Diagnostics only operates 2,250 Patient Service Center locations in the United States—*i.e.*, locations where consumers can go to have their lab samples collected. [11]  It is therefore misleading, by a magnitude of approximately 33%, for Superpower to advertise that its members can have their blood drawn at "3,000+ Quest Diagnostics lab locations."

46.    Function is informed and believes that, other than at-home testing, Superpower's platform limits consumers to making appointments for blood draws at Quest lab locations alone.  Thus, even without specifically referencing Quest, it is misleading, by a magnitude of approximately 33%, for Superpower to advertise that its members can receive a blood draw at 3,000+ labs or locations in addition to at-home testing.

*    *    *

47.    In summary, Superpower has engaged in—and continues to engage in— a pattern of deception that misleads consumers about the core services that Superpower touts as market differentiators, including false claims that Superpower offers its members "100+ labs" and "100+ biomarkers," 24/7 access to a clinical care team, and the flexibility to visit "3,000+" lab locations.

## IV.    Superpower Also Makes Numerous False and Misleading Comparative Superiority Claims in Relation to Function.

48.    Companies are generally free to engage in comparative advertising. While truthful comparisons can help consumers make informed choices in competitive markets, engaging in comparative advertising carries corresponding responsibilities: when a company chooses to speak about a competitor, it must do so truthfully.  In other words, companies may not disseminate false or misleading statements that misrepresent the nature, characteristics, or qualities of either the advertiser's own offerings or those of its competitor.

---

[11]    Quest Diagnostics, *Patient Service Centers (PSCs)*, https://www.questdiagnostics.com/business-solutions/employers/population-health/biometric-screening/patient-service-centers (last accessed Jan. 26, 2026).

49.    Superpower's comparative advertising violates each of these principles.

**A.    Superpower's comparative chart offers an exemplar of its deceptive advertising practices *vis a vis* Function.**

50.    For example, one of Superpower's heavily promoted advertisements purports to directly compare Superpower's features against Function's across numerous dimensions.[12]

*Left Intentionally Blank*

---

[12] Superpower made similar comparisons to Function in a thread on X, where it touted that Superpower does "3x more for half the price" and has "3,000+ locations," while "Function requires you to draw blood twice" and has "no access to a medical team." Max Marchione, X (Nov. 20, 2025), https://x.com/maxmarchione/status/1991616525728641412?s=20 (last accessed Jan. 26, 2026).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

COMPLAINT



**Source**: https://superpower.com/superpower-vs-function-health | **Last Accessed**: Jan. 26, 2026

51.     Almost every element of this chart advances a false and misleading comparison with Function, including but not limited to, the following:

a. ***Biomarkers.*** Superpower's comparative chart deceptively implies a false equivalence between (i) the testing available via Function, which actually covers 100+ biomarkers and (ii) Superpower's inflated combination of only 55 lab tests plus dozens of derivative calculated metrics. By attempting to pass-off its calculated metrics as lab tests (*i.e.*, biomarker measurements), Superpower overstates the scope and the medical significance of its core services, thereby confusing reasonable consumers about the breadth, depth, and value of the testing included with its basic membership—particularly in comparison to Function's more robust offering.[13] This deception appears across numerous of Superpower's comparative advertisements.

b. ***Number of Draws.*** Superpower's comparative chart misleadingly states that Function requires "2 separate draws." This statement dubiously omits the following facts:

i.  Function does not ***require*** consumers to undergo two separate blood draws: most consumers[14] require just one blood draw to complete the initial testing sequence associated with a Function membership. Indeed, Function's standard initial testing sequence analyzes up to

---

[13] Superpower's inclusion of a short disclaimer at the bottom of the chart does nothing to remedy its deceptive comparisons on this issue. As an initial matter, the disclaimer is not connected to any particular claim in the chart and does not identify which or how many of these "biomarkers" are not actually direct biomarker measures—but rather calculated metrics. Indeed, even were the reader to intuit that the claim relates to assessments of biomarkers, because the disclosure is not connected to Superpower's testing protocol, the reader may wrongly conclude that Function's claims about biomarker testing also rely on the inclusion of calculated metrics.

[14] Members with an active menstrual cycle need two separate visits for accurate hormone results, but other biomarkers are completely assessed during the initial sequence.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

91 biomarkers through a single blood draw and up to 27 biomarkers through one urine sample, whereas Superpower's standard testing, as referenced in comparative advertising, measures only approximately 55 biomarkers by way of one blood draw. Superpower omits this information from its comparative advertising and misleads consumers into believing that they can obtain lab testing via Superpower that is equivalent to lab testing via Function with one less required blood draw, ***even though*** Function's initial testing sequence includes access to a far more robust testing protocol using the same number of blood draws.

ii. Making matters worse, Superpower flatly fails to mention that Function members have the ***option*** to undergo a second blood draw approximately six months later, but may elect not to do so.  In other words, there is no requirement by Function that its members complete a second blood draw; rather, Function includes prepaid access to 60+ mid-year lab tests in the cost of its membership, so that its members may develop a more complete, dynamic picture of their health over time and thereby more fully realize the value of Function's platform. Notably, Superpower's comparative advertising also fails to mention that Superpower requires its members to pay substantial additional fees if they wish to receive follow-on testing after the initial battery of approximately 55 lab tests.

iii. Within this framework of false comparison, Superpower's misstatements and omissions reflect a concerted effort to

saturate consumers with false impressions of parity (as to the scope of lab testing) and superiority (as to convenience, cost and value) *vis a vis* Function's competitive services.

c. ***Action Plan***. Superpower's comparative chart conceals the fact that Function also offers a "personalized action plan." While the chart states that an action plan is "included" with Function's services, it conveys that the plan is not "personalized," as compared to Superpower's action plan. In reality, both companies provide their consumers with personalized plans that not only describe the consumers' lab results, but also offer specific, actionable ideas and insights based on those results.

d. ***24/7 Concierge.*** Superpower's comparative chart also falsely represents that Function does not provide members access to a "concierge," or care team, that can be contacted 24 hours a day, seven days a week. Moreover, contrary to the comparative chart, Function ***does*** in fact provide its members with access to (a) member chat that members can use at any time of day to schedule and update appointments and ask questions, and (b) Private AI Chat (beta feature), which can help consumers analyze their clinical results, develop personalized protocols based on those results, and more.

e. ***Data Upload.*** Superpower's comparative chart falsely states that Function does not allow consumers to upload external labs and data to Function's platform. This representation is expressly false because Function does, in fact, allow consumers to upload previous lab results to Function's platform. Function users can also connect supported third-party wearable devices to sync, upload, and track additional health data within the Function

application.  Superpower, on the other hand, currently does not allow members to connect their third-party wearable devices to their Superpower account.

    f. ***Cost.***  Superpower's comparative chart falsely represents that Function charges consumers $400–490 per year.  In reality, a standard Function membership, which provides consumers with annual access to 160+ lab tests and a groundbreaking health technology platform, costs only $365 per year.  Superpower's overt misstatement about the cost of a Function membership (a) stands to deceive consumers about the true cost of a standard Function membership and (b) thereby perpetuates the falsehood that Superpower offers a materially lower price for an equivalent offering.

52.    As detailed below, the false and misleading statements in Superpower's comparison chart are repeated in many other Superpower advertisements that further perpetuate Superpower's campaign of deception.

**B.    Superpower's video advertisements repeat the falsehoods that Superpower sets forth in its comparative chart.**

53.    After Function's November 19, 2025 announcement of a Series B $298 million capital raise, Superpower intensified its targeted attacks at Function.

54.    For example, on November 29, 2025, Superpower posted a video (the "November 2025 Video") on its Instagram account that stated: "Function Health ($499) gives you data but ***no action plan***—felt like I needed a medical degree. . . . Superpower ($199) tests 100+ biomarkers AND gives personalized insights with clear next steps."[15]  The November 2025 Video repeats multiple falsehoods reflected in the comparative chart, including the false assertion that Superpower tests 100+

---

[15] Superpower, INSTAGRAM (Nov. 29, 2025),
https://www.instagram.com/p/DROw5oXDOMQ/?utm_source=ig_web_copy_link
&igsh=NTc4MTIwNjQ2YQ== (last accessed Jan. 26, 2026) (emphasis added).

biomarkers, that Function does not provide its members with a personalized action plan and that Function costs $499 per year, when in fact the standard membership is only $365 per year and provides more robust testing.

55.    Many of the falsehoods from the comparison chart have also been incorporated into a more recent Superpower marketing video made by Marchione in his capacity as the Co-Founder of Superpower and disseminated by Marchione in social media posts.  Specifically, on December 1, 2025, Marchione posted a video (the "December 2025 Video") purporting to summarize the key reasons "Why Function Health members are switching to [Superpower]" on X (f/k/a Twitter).[16] In this video, Marchione states that "Function tests a lot, but then *leaves you in the dark*, whereas Superpower continues when Function ends."[17]   Marchione then falsely boasts that Superpower does "around *three times more than [F]unction*," "can test in *one draw, not two separate draws* … which gets a little bit frustrating," and provides consumers with "a *real clinical team* you can talk to *24/7*."[18]




---

[16]    Max    Marchione,    X    (Dec.    1,    2025), https://x.com/maxmarchione/status/1995628197707481379?s=20 (last accessed Jan. 26, 2026).
[17] *Id.*
[18] *Id.*

56.    After publishing the December 2025 Video, Marchione replied to his original post, repeating the misstatement that "Function = 100+ labs then nothing" whereas Superpower "= 100+ labs then so much more," including "24/7 medical team," the ability to "[u]pload past lab tests," and "[p]ersonalized protocol."



**Source**: https://x.com/maxmarchione/status/1995646881482113318?s=20 | **Date**: Dec. 1, 2025

57.    Marchione also posted the December 2025 Video on other social media platforms, alongside a caption stating that Function consumers "[g]ot their results. Found out their biomarkers were a mess. ***And then...got ghosted. No follow-up. No guidance. No support***. . . . When you test with Superpower, you don't get abandoned with a PDF."[19]  The caption then repeated that Superpower provides consumers with a "personalized health plan" and "[y]ear-round clinical support via private SMS concierge," further stating that its "clinical team won't send automated responses."[20]

---

[19] Max Marchione, *Your Complete Health Plan for $17/Month*, Facebook (Dec. 9, 2025), https://www.facebook.com/61584814527888/videos/1662973388021785/ (last accessed Jan. 26, 2026) (emphasis added); Superpower, INSTAGRAM (Dec. 15, 2025), https://www.instagram.com/p/DST7qW_jFHX/?utm_source=ig_web_copy_link&i gsh=NTc4MTIwNjQ2YYQ== (last accessed Jan. 26, 2026) (emphasis added).
[20] *Id.* (emphasis added).

As such, Superpower urges consumers, "***Don't pay more to be left alone***."[21]

58.    Both the November and December 2025 Videos were posted directly on the heels of Function's announcement of its Series B fundraising round and reflect a desperate attempt to flatten Function's  trajectory in the industry.  For example, the December 2025 Video—wherein Marchione personally reiterates numerous false comparative claims regarding Function—has taken on increasing prominence throughout Superpower's advertisements, with a version now appearing on Superpower's website when consumers click "Hear from Our CEO" and then "Superpower vs Function/Others."[22]  Another version appears on Instagram, this time including Function's logo at the beginning and repeating the same false and misleading claims described above.



**Source**:

https://www.instagram.com/p/DST7qW_jFHX/?igsh=NjZiM2M3MzIxNA%3D%3D | **Date**: Dec. 15, 2025

---

[21] *Id.* (emphasis added).
[22] Superpower, *Frequently Asked Questions*, https://superpower.com/faqs (last accessed Jan. 26, 2026).

59. Superpower advertisements that made direct comparisons to Function, including but not limited to the December 2025 Video and Superpower's related posts and captions, mislead consumers in the following ways:

a. ***Scope of Testing.*** By claiming "we do about three times more than [F]unction," followed by social media posts falsely repeating that "Superpower = 100+ labs," Superpower falsely claims that its members receive lab testing of greater breadth and scope compared to Function, when in reality, Superpower members receive only 55 lab tests as part of the standard package, and Function members receive 160+ lab tests. Indeed, if one is given to comparison, it would be far more accurate to say that ***Function*** does "about three times more" than ***Superpower***.

b. ***Number of Draws***. The December 2025 Video and Superpower's subsequent advertisements leans into Superpower's previously described omissions and mischaracterizations relating to the number of blood draws that Function requires its members to complete.

c. ***Action Plan & Accusations of "Ghosting."*** Superpower's December 2025 video and related content falsely suggest that Function does not offer a personalized action plan to its members. Moreover, in this advertising content, Superpower deceptively claims that Function does "nothing" for consumers once testing is completed – Superpower affirmatively misrepresents that, after testing is complete, Function provides consumers with a PDF containing only their results, and proceeds to "ghost" them and leave them in the dark. In reality, Function provides its members with a personalized action plan that includes a summary of the user's results, clinician notes, a nutrition and supplement plan, as

well as access to Private AI Chat (beta feature) which can help users create various lifestyle protocols. If Function members have any questions about their lab results, the Function platform allows members to view in-depth information about the testing, including but not limited to information explaining why every tested biomarker matters. Additionally, if any of the member's test results show a critically out-of-range value, a licensed healthcare provider will proactively call to discuss the critical result. Atop all of this, a Function membership includes a follow-on mid-year set of 60+ lab tests, in addition to the initial testing protocol, so that Function members can track changes in health.

d. ***24/7 Concierge.*** The December 2025 Video and related advertising also perpetuates Superpower's falsehoods about consumers' ability to talk to a real clinical team at Superpower on a "24/7" basis. Rather than providing consumers with 24/7 access to a "clinical team [that] won't send automated responses," Superpower (a) itself states that it will respond to consumers "within 24 hours on weekdays" and thus does not guarantee that its care team will respond to members on weekends, (b) sends consumers automated notifications in response to their initial inquiries, (c) routinely delays providing human responses to consumer questions for up to 24 hours or more, and (d) does not actually furnish responses from licensed doctors or nurses.

e. ***Data Upload.*** The December 2025 Video and Superpower's subsequent advertising falsely state that Function does not allow consumers to upload external labs and data to Function's platform. As discussed above, Function does, in fact, allow consumers to upload data from wearable devices and previous lab

results to Function's platform, while Superpower does not currently integrate consumers' data from wearable devices into the Superpower platform such that consumers can track and monitor that data within the application.

**C.      Superpower falsely advertises that Function charges $499 twice per year, deceiving consumers about the comparative cost of Function.**

60.      In addition to the misrepresentations reflected in the comparative chart and across other Superpower advertisements, Superpower falsely claims that "***Function charges $499 twice yearly***" and then "leaves you hanging with results you can't understand."



Cooley LLP
Attorneys at Law
San Diego

61.    This is a bald misrepresentation of fact.  Function charges a one-time $365 fee per year for a standard membership, not $499 twice per year. In addition, Function does not "leave [consumers] hanging."  As previously described, following initial testing, Function provides its members with a personalized action plan, chat functionality, follow-on testing, and a phone call if critical results emerge.

**D.    Superpower's "Better than Function" advertisements continue Superpower's campaign of deception and falsehoods.**

62.    While the foregoing advertisements are wildly misleading on their own, Superpower goes a step further by running sponsored advertisements that broadly claim Superpower is "Better than Function" and that link and support this claim of superiority to many of the same false and misleading descriptions of fact that pervade the other advertising discussed in this Complaint.  This and other sponsored results often appear when "Superpower" and "Function" are searched together.



COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

COMPLAINT



63.    Superpower also runs a Facebook advertisement that features a blurred version of Function's trademarked logo and utilizes Function's font and color scheme before claiming that "One of these is a better deal…"



64.    These comparative claims expressly assert that Superpower is, as a matter of fact, superior to Function, thereby disparaging the quality and performance

of Function's services.

    a.  As explained above, such claims and comparisons are false and misleading, because Superpower (a) falsely represents that Superpower offers its consumers paid access to "100+ Lab Tests" "100+ Biomarkers" for $199/year (when it is actually only provides around 55 lab tests per year for the advertised price); (b) omits that Function does in fact offer consumers annual access to 160+ actual lab tests; and (c) does not account for material benefits in the features/functionality of the Function platform that are lacking from Superpower (*e.g.* wearable integration, mid-year follow-up testing included, more expansive access to different types of lab testing, nexus to body scans/imaging).

    b.  Indeed, Superpower's testing protocol is materially less robust than Function's, because Superpower's protocol does not currently test numerous important clinical indicators, including Homocysteine, Lipoprotein(a), leptin, insulin, lead, mercury, antinuclear antibodies, prolactin, anti-mullerian hormone, and various nutrients like zinc, magnesium, and Omega-3 and -6—key biomarkers that ***are*** included in testing via a Function membership.  Moreover, unlike Function, Superpower's standard package does not offer any urinalysis testing, which is designed to uncover early signs of such commonly overlooked conditions as kidney disease, urinary tract infections, diabetes and even certain cancers.  By facilitating the testing of these key biomarkers and others not included in Superpower's $199/year membership, as well as including substantial mid-year follow-on testing (60+ lab tests) and enabling access to a more expansive array of  add-on tests than Superpower, a Function membership unlocks a wider range of monitoring and potential detection vis-a-vis adverse health conditions, and includes a more thorough overall evaluation of key organs, hormones, nutrients, and environmental

exposures.

65.    For all of these reasons, it is deceptive for Superpower to assert without qualification or explanation that it is "Better than Function" or a "better deal" than Function.

**V.    Superpower Has Doctored Online Content to Perpetuate Deceptive Comparisons to Function.**

66.    Superpower does not merely misstate its offerings and misrepresent Function's services—it also doctors online consumer review content to manufacture a fake endorsement of its services and then uses this fabricated endorsement message in comparative advertising directly targeting Function.

67.    For example, one Reddit user recently posted a thread titled, "Superpower Health just edited one of my posts and are using it in an ad."[23]  In this thread, the Reddit user posted a screenshot of their original post, compared to what Superpower eventually doctored and used as an advertisement.  The Reddit user explained: "Not sure if others have seen this yet, but ***Superpower Health is running Meta ads*** using a ***doctored version*** of one of my posts from this subreddit.  I have no beef with this company, but think it's pretty suss they are doing this.  The ad shows a screenshot that looks like my original post, but ***they edited the text to make it sound like I was endorsing their new $199 biomarker test***. The version in the ad removes part of what I actually wrote. My real post is still up on the sub, so the altered parts are easy to compare.  To be clear, ***I didn't give permission for my username, my post, or the subreddit to be used in advertising***.  I'm flagging this for a few reasons: It sets a bad precedent if companies can just edit user posts and run them as ads. It misrepresents the sub's sentiment and makes us look like we're 'losing it' over a product none of us actually endorsed[.] It uses user content for commercial gain

---

[23] @aldus-auden-odess, *Superpower Health just edited one of my posts and are using it in an ad*, https://www.reddit.com/r/Biohackers/comments/1phgsha/superpower_health_just_edited_one_of_my_posts_and/ (last accessed Jan. 26, 2026).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**COMPLAINT**

without consent."[24]

| *Original Reddit Post* | *Superpower's Edited Advertisement* |
|---|---|




68.    In response to Superpower's fabricated Reddit review, numerous Reddit users shared their contempt for Superpower's unethical and deceptive conduct.  For example:



---

[24] *Id.* (emphasis added).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28







morestatic · 7d ago

🚩 I can't believe they edited your post and kept your username. It's obvious from the spacing between paragraphs that they faked that text.

Glad I didn't buy yet...I'll go with a competitor. Sorry this happened to you. Must feel icky.

⬆ 47 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

TheClozoffs · 1mo ago
4

This effectively misquotes you on purpose, attempting to make use of your sub status and banners by straight up lying.

This can damage your reputation by making YOU appear to be a marketing shill.

Damaging your reputation you have worked hard to gain sounds like something that deserves legally binding compensation.

⊖    ⬆ 107 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

LittleMsSavoirFaire · 1mo ago
5    🏅 Top 1% Commenter

Plus, shills get paid. Unjust enrichment on the back of OP

⬆ 24 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

Prescientpedestrian · 1mo ago
12    🏅 Top 1% Commenter

Never using them. Red flags galore

⊖    ⬆ 212 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

DungeonVig · 1mo ago

Agreed. Shady will never touch them now.

⬆ 42 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

jkamin · 1mo ago
1

They have been using bots to post on our ads ( r/goodlabs)

⊖    ⬆ 23 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

brandonballinger · 1mo ago
3

We (Empirical) have gotten some bot traffic too, and now I'm wondering...

⊖    ⬆ 9 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

granteloupe22 · 1mo ago
2

Yeah after seeing the comments on our ads I noticed similar comments on ads from Function/Mito too, so they must just be trying to do a massive smear campaign to everyone in the space which is gross

⬆ 7 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

dinkydonuts · 1mo ago
2

69.     While these particular Reddit users had the benefit of seeing the original consumer review on Reddit, the general audience for Superpower's doctored advertisement (*i.e.*, those who saw the offending advertisement on Facebook) would have had no way of knowing that the original post had been falsified, and would necessarily be deceived and misled.

70.     Superpower's manipulation of user-posted content is part of Defendant's broader campaign aimed at denigrating Function through false and misleading representations of fact.  Specifically, by doctoring the Reddit user's post to remove content intended by the author to highlight *limitations* of Superpower's offering (*i.e.*, the author's belief that for $199, it offers only an "abridged" test protocol that does not include a number of core biomarkers) and substituting fabricated positive content that touts the inclusions in its offering, Superpower sought to further its false narrative that Superpower is a better value than Function because it offers equivalent number of tests and biomarkers at a lower price.   Indeed, Superpower's caption of the doctored advertisement, "r/Biohackers is losing it. Because we just undercut competition . . . ," (a) furthers the deception by falsely stating that the Reddit users are "losing it" over Superpower's services and pricing relative to those of Function and other competitors and (b) underscores the intentional nature of Superpower's deception by making explicit reference to "undercut[ting] competition."

71.     Superpower's outright fabrication of third-party social media content— taken alongside Superpower's widespread campaign of lying to the market about its services and offerings, as well as those of its competitor Function— is consistent with its leadership's prior engagement in fraudulent schemes and illegal conduct.

        a.  Just as its CEO Peters was admittedly involved in "minting" fake IDs,[25]

---

[25] *#70: Jacob Peters - LEGO Empires, Fake ID Rings, Tulum Mansions, and Discovering Community*, FINDING FOUNDERS (May 13, 2021), https://www.ivoox.com/en/70-jacob-peters-lego-empires-fake-id-audios-mp3_rf_69986452_1.html (last accessed Jan. 26, 2026).

Superpower creates fake consumer review content for the purposes of generating competitive advertisements.

b. Just as Marchione injected a podcast host with ***two different prescription medications***—(i) without, on information and belief, a license to administer the injections or a prescription for the medications, (ii) with an implicit acknowledgment that he knew what he was doing was illegal, and (iii) all while effectively promoting medications sold by Superpower— Superpower breaks legal boundaries widely, brazenly, and very publicly through blatantly misleading advertisements across online media.[26]

c. Just as Superpower's leadership manages a workplace where co-workers inject each other "for fun" during Friday meetings—on information and belief, without proper licensure or prescriptions—Superpower now flouts public health and safety by misrepresenting, *inter alia*, the number of lab tests included with its membership, the scope of its clinical offerings, and the number of available testing locations.[27]

d. In this context, where Superpower offers access to important healthcare services directly to consumers, the implications of entrusting such responsibility to a company marred by a lack of respect for regulatory and ethical obligations are profound: such conduct threatens not only individual consumers but undermines confidence in the integrity of the advanced laboratory testing industry as a whole.

## VI.   Superpower's Deceptive Advertising Campaign Has Injured Function and the Public.

72.   Unfortunately, Superpower's false advertising is having its intended effect. Consumers are deceived, including at least one consumer who replied to the

---

[26] Relentless, *#36 – Solving Health Using AI | Max Marchione, Superpower*, YOUTUBE (Aug. 14, 2025), https://www.youtube.com/watch?v=wsZVoNzBbJs (last accessed Jan. 26, 2026).
[27] *Id.*

above post by Marchione with: "*i just switched*" from Function.[28] Another consumer commented as follows on a Function advertisement:



Sheri Jub
I prefer Superpower bc it's less money, as comprehensive in testing and amazing concierge services and tons of other testing for less money.

**Source**:
https://www.facebook.com/658307356329871/posts/1233683885458879?comment
_id=1825689468025178 | **Last Accessed**: Jan. 13, 2026

73.    Other consumer responses, in addition to the ones described above and not included herein, similarly reflect that consumers have been deceived by Superpower's false advertising and, in some cases, have switched from Function to Superpower:



Tommy Muller ✔ @tommycmuller · Nov 21    ⊘ ···
Okay I'm switching from function.

Is there a way to easily upload function labs?

They don't offer download so I would need to screenshot everything

♡            ⇅            ♡            ⅈⅈⅈ 47            🔖    ⬆

**Source**: https://x.com/tommycmuller/status/1991925436390219994?s=20 | **Date**:
Nov. 21, 2025



J. @remnant1613 · Nov 20    ⊘ ···
I was literally about to tag you in a tweet asking how @superpower is different!

Got my draw done this week. Stoked to be a user! 🖐️🔥

♡            ⇅            ♡ 5            ⅈⅈⅈ 642            🔖    ⬆

**Source**: https://x.com/remnant1613/status/ 1991655372378308661?s=20 | **Date**:
Nov. 20, 2025

---

[28] Austin Rief, https://x.com/austin_rief/status/1995889618152046874?s=20 (emphasis added) (last accessed Jan. 26, 2026).



**Source**: https://x.com/amrevveejnas/status/1991635887286018384?s=20 | **Date**: Nov. 20, 2025

74.     Indeed, in Superpower's advertising described herein, Marchione boasts that "every day we have members who tell us they're switching from Function." This statement by Marchione is either (a) yet another false advertisement designed to divert business away from Function; or (b) a strong indication that Superpower's false advertising is materially impacting consumers' decisions to choose Superpower over Function.[29]

75.     Function has been irreparably injured by Superpower's false advertising, which impugns the quality and performance of its services, advances a competitor's services on false pretenses, and damages Function's goodwill and business in ways that cannot readily be quantified or recaptured. Among other things, the challenged advertising sows doubts in consumers' minds about the extent of lab testing and preventative health services available via Function. As such, Function's reputation and standing with the consuming public has been harmed, resulting in consumers and sales being diverted away from Function to Superpower.

76.     If Superpower continues its false and misleading advertising campaign, Function will likely (a) lose the loyalty of existing consumers, (b) fail to attract new consumers who otherwise would have chosen Function but for Superpower's false advertising, and (c) suffer from a harm to reputation in the marketplace—be it with consumers, business partners, investors, or otherwise. This damage is and will continue to be difficult to quantify or remediate, and Function is likely to continue to

---

[29] Max Marchione, *Your Complete Health Plan for $17/Month*, Facebook (Dec. 9, 2025), https://www.facebook.com/61584814527888/videos/1662973388021785/ (last accessed Jan. 26, 2026).

1   suffer irreparable injury until Superpower's false advertising is stopped.

2       77.   In addition to causing irreparable injury to Function, Superpower's

3   deceptive advertising campaign harms the public interest.  Consumers rely on

4   information in advertisements to make educated purchasing decisions.  Superpower's

5   advertisements have the purpose and effect of deceiving consumers and inducing

6   them to subscribe to Superpower services based on misinformation about the full

7   extent of Superpower's own services, as well as Function's offerings.  Worse,

8   Superpower's overtly false advertisements about Function pose serious risks to

9   public health and the reputation of the advanced laboratory testing industry, as such

10   deceptive advertising steers consumers to insufficient services (in the health industry,

11   no less) undermines consumer trust in legitimate providers, and casts doubt on the

12   integrity of personalized preventative health testing.  Accordingly, the relief

13   requested herein furthers the public interest in truthful advertising.

14       78.   Function has a strong commercial interest in preventing the further

15   dissemination of Superpower's false advertising.  Superpower's conduct and the

16   resulting harm caused to Function will continue unless and until halted by this Court,

17   and absent such injunctive relief, Function has no adequate remedy at law. Function

18   thus seeks permanent injunctive relief, corrective advertising, damages, treble

19   damages and litigation fees and costs (including without limitation attorneys' fees)

20   based on Superpower's willful conduct.

21   <u>**COUNT I**</u>

22   **False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)**

23       79.   Function repeats and incorporates by reference the allegations in the

24   foregoing paragraphs.

25       80.   By disseminating deceptive and misleading claims about its own

26   services and false comparative advertising about Function's services, Superpower

27   (and any Doe Defendants acting on its behalf) made false, misleading, and

28   deceptive representations of fact in its promotion and sale of Superpower's services.

81.    Superpower's statements also misrepresented the nature, characteristics, and qualities of Function and its services, and were material to consumer purchasing decisions.

82.    Superpower's blood testing services are advertised and sold in interstate commerce.

83.    The above-described acts and practices constitute false advertising in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

84.    Function has standing to sue Superpower for false advertising under the Lanham Act.    Function and Superpower are direct competitors offering biomarker testing services.    Function has been injured by Superpower's conduct. This injury includes direct diversion of customers and sales from Function to Superpower and injury to Function's reputation.    Function's injury was proximately caused by Superpower's false and misleading statements.

85.    Superpower has a pattern and practice of engaging in overt misrepresentations and omissions of material fact, with respect to both its own services and Function's services, in order to (a) unduly advance its own business interests, (b) draw false and misleading comparisons between Function and Superpower, and thereby (c) harm Function's business interests and reputation. Moreover, Superpower Co-Founders and representatives Peters and Marchione possess a significant history of knowing engagement in blatantly illegal activity to the detriment of public health and safety.    As such, Function asserts on information and belief that Superpower willfully and deliberately proffered false information and drew deceptive comparisons between Function and Superpower when, without limitation, Superpower and its representatives published the advertisements specified in the Complaint on its website, on social media, and in its online display advertisements.

86.    Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover (i) Defendant's profits, (ii) Plaintiff's ascertainable damages, and (iii) Plaintiff's costs

of suit.  Moreover, Defendant's willful conduct renders this an exceptional case entitling Function to treble damages and reasonable attorney fees.

## COUNT II

### False Advertising in Violation of the California False Advertising Law under Cal. Bus. & Prof. Code § 17500, *et seq.*

87.  Function repeats and incorporates by reference the allegations in the foregoing paragraphs.

88.  By disseminating deceptive and misleading claims about its own services and false comparative advertising about Function's services, as herein described, Superpower (and any Doe Defendants acting on its behalf) made untrue or misleading statements in their promotion and sale of Superpower's services.

89.  Superpower's statements, as specified in this Complaint, misrepresented the nature, characteristics, and qualities of Function and its platform, and were material to consumer purchasing decisions.

90.  Superpower knew or should have known through the exercise of reasonable care that the statements identified as false and misleading in this Complaint are, in fact, false or misleading.  As such, Defendant violated the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*).

91.  Plaintiff Function has suffered an injury in fact, including the loss of money, as a result of Superpower's unfair, unlawful, and deceptive practices.  Consumers relied on the representations in Superpower's untrue or misleading statements as described herein and, as a result, subscribed to Superpower's services, which in turn resulted in damage to Function by diverting customers away from Function and its services.  Had Defendant Superpower not made such false and misleading statements, consumers would have altered their purchasing behavior.

92.  Superpower's wrongful conduct alleged herein occurred in the course of Defendant's business.

93.  Function requests that this Court enter such orders or judgments as

may be necessary to enjoin Superpower's false and misleading acts and restore to Function any money Superpower acquired by unfair competition, including restitution and/or disgorgement.

94.    Function is also entitled to attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

### COUNT III

**Violation of the California Unfair Competition Law under Cal. Bus. & Prof. Code § 17200, *et seq.***

95.    Function repeats and incorporates by reference the allegations in the foregoing paragraphs.

96.    By the acts described above, Superpower (and any Doe Defendants acting on its behalf) engaged in unlawful, unfair, and fraudulent business practices that injured Function's business in violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*).

97.    Superpower's acts described above were unlawful as Superpower's acts violated the Lanham Act (Count I), the California False Advertising Law (Count II), and the United States Federal Trade Commission's Trade Regulation Rule on the Use of Consumer Reviews and Testimonials, 16 C.F.R. part 465.2.

98.    Superpower's acts described above were unfair as Superpower made advertising that was false or had a tendency to deceive or confuse the public. Superpower's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct—especially in the context of a health and wellness offering.

99.    Superpower's acts, as described in this Complaint, are fraudulent because, as set forth above, Superpower overtly misrepresented its own services and Function's services in order to (a) unduly advance its own business interests, (b) draw false and misleading comparisons between Function and Superpower, and

thereby (c) harm Function's business interests and reputation. Such deceptive advertising was false, misleading, and/ likely to deceive the consumer public within the meaning of California Business & Professions Code § 17200.

100. Through Superpower's acts described above, Superpower wrongfully acquired money or property at Function's expense. Additionally, consumers have been harmed as a result of Defendant's acts described above, as consumers have relied on the truth and accuracy of Defendant's false and misleading advertisements when making purchasing decisions.

101. Function requests that this Court enter such orders or judgments as may be necessary to enjoin Superpower's unfair competition and restore to Function any money Defendant Superpower acquired by unfair competition, including restitution and/or disgorgement.

102. Function is also entitled to litigation fees and costs, including but not limited to attorneys' fees, pursuant to California Code of Civil Procedure § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Function seeks judgment against Defendant as follows:

a) An injunction that permanently bars Defendant from:

    (1)   Disseminating the advertisements referenced herein and any other substantially identical advertisements;

    (2)   Disseminating any advertisement or promotional communication that includes any false or misleading statements about the scope, nature, quality, or quantity of Superpower's services, including without limitation any statement that:

        (i)   Superpower offers 100+ lab tests and/or 100+ biomarkers;

        (ii)   Superpower offers consumers the ability to access or talk to a clinical care team "24/7"; and/or

        (iii)   Superpower offers consumers access to "3,000+" lab testing

locations;

(3)    Disseminating any advertisement or promotional communication that includes any false or misleading about the scope, nature, quality, or quantity of Function's services, including without limitation any statement that:

     (i)    Function's services require consumers to have two blood draws instead of one blood draw;

     (ii)    Superpower does "about three times more" than Function.

     (iii)    Function's services do nothing for consumers after providing consumers with their testing results;

     (iv)    Function fails to offer a personalized action plan;

     (v)    Function's services do not allow consumers to upload external labs and data to Function's platform; and/or

     (vi)    Falsely describes Function's pricing or asserts that Function charges its standard membership rate twice a year.

(4)    Disseminating any advertisement or promotional communication that includes any false or misleading comparison between Function and Superpower, including without limitation any statement that:

     (i)    Superpower's services are generally superior to Function's services;

     (ii)    Function's services are generally inferior to Superpower's services; and/or

     (iii)    Superpower does "about three times more" than Function

     (iv)    Superpower offers a "better deal" than Function.

(5) Creating or disseminating fake consumer review content or otherwise altering third-party content to create a false impression.

(6) Disseminating online content that reflects or encourages unlawful injections and/or the provision and/or consumption of prescription

medication without a proper prescription.

b)    An order directing Superpower to disseminate, in a form to be approved by the Court, advertising designed to correct the erroneous impressions created by the false and misleading claims made by Superpower in its advertising;

c)    An order pursuant to 15 U.S.C. § 1116(a) directing Superpower to file with the Court and serve upon Function, within 30 days after entry of judgment, a report, in writing and under oath, setting forth in detail the manner and form in which Superpower has complied with the judgment;

d)    An award of Function's damages attributable to Superpower's false advertising, in an amount to be determined at trial;

e)    Disgorgement of Superpower's profits from the sale of the falsely advertised products, pursuant to 15 U.S.C. § 1117;

f)    A declaration that this is an "exceptional case" due to the willful nature of Superpower's false advertising and/or the disregard for public health and safety, and an award of treble damages, litigation fees and costs (including without limitation attorneys' fees) to Function pursuant to 15 U.S.C. § 1117;

g)    A declaration that this action resulted in the enforcement of an important right affecting the public interest, and award of litigation fees and costs (including without limitation attorneys' fees) to Function pursuant to Cal. Civ. P. Code § 1021.5; and

h)    Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action to triable as of right.

1    Dated:        January 26, 2026            **COOLEY LLP**

2

3                                              By: */s/ Megan L. Donohue*

4                                                   Megan L. Donohue

5                                              SCOTT D. DAILARD (172477)
                                               (sdailard@cooley.com)
6                                              MEGAN L. DONOHUE (266147)
                                               (mdonohue@cooley.com)
7                                              VIVIENNE GOLDSCHLAG (345611)
                                               (vgoldschlag@cooley.com)
8                                              10265 Science Center Drive
                                               San Diego, CA 92121-1117
9                                              Telephone: +1 858 550 6000
                                               Facsimile:  +1 858 550 6420

10                                             Attorneys for Plaintiff
                                               Function Health, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO                                      45                              **COMPLAINT**